**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

CEDRIC L. YOUNG,

                 Plaintiff,

     v.

DR. RICHARD STEFANIC, DR.
BLATT, MYRON STANISHEFSKI,
RICHARD S. ELLERS,

                 Defendants.

Civil Action

No.  10-CV-3449

**<u>Memorandum</u>**

Pollak, J.

Plaintiff Cedric Young is a prisoner in the custody of the Pennsylvania State

Department of Corrections ("DOC"), incarcerated at the State Correctional Institution at

Graterford ("Graterford").  His amended complaint names four defendants: (1) Dr.

Richard Stefanic, a physician employed by the DOC to provide medical services at

Graterford; (2) Dr. Blatt, another physician employed by the DOC at Graterford; (3)

Richard S. Ellers, the Director of the Bureau of Health Care Services at Graterford; and

(4) Myron Stanishefski, the Corrections Health Care Administrator at Graterford.  *See*

Docket No. 21.[1]  Plaintiff alleges that the defendants violated his constitutional rights by
failing to provide proper medical treatment for his injured knee.  Three of the
defendants—Dr. Stefanic, Ellers, and Stanishefski—have now moved to dismiss
plaintiff's complaint.  *See* Docket Nos. 34 and 35.  For the reasons that follow, the court
will grant their motions.

## I. **Background**[2]

On July 20, 2007, plaintiff injured his left knee while playing basketball at
Graterford.  He was treated by a nurse after the injury and was provided an ice pack,
bandage, and over-the-counter pain relief pills.  On July 25, 2007, Dr. Blatt examined
plaintiff, prescribed him pain relief medication, and referred him to a physical therapist.
According to plaintiff, this course of action was improper because Dr. Blatt should have
known that plaintiff needed immediate medical attention and not a physical therapist,
"who was not a doctor."  *See* Docket No. 21 at 3.  The physical therapy was unsuccessful,
and plaintiff was subsequently referred to Dr. Stefanic, who gave plaintiff a cortisone
injection, a cloth knee brace, and another prescription of pain medication.

---

[1]  Plaintiff's initial complaint, filed on July 12, 2010, named Graterford and the
Graterford Medical Department as defendants.  *See* Docket No. 1.  Thereafter, plaintiff
requested leave to amend his initial complaint to drop Graterford and the Medical
Department as parties and to add alternative defendants.  *See* Docket No. 4.  That request
was granted, *see* Docket No. 7, and Graterford and the Medical Department are no longer
parties to this action.

[2]  The information in this section is taken from the allegations in plaintiff's
amended complaint.  *See* Docket No. 21.

On September 8, 2008, plaintiff was sent to an outside hospital for an MRI, which revealed a torn tendon in his knee.  Dr. Stefanic asked plaintiff if he wanted surgery, and plaintiff said he did.  On October 23, 2008, plaintiff was sent to an outside doctor, Dr. McHugh, a sports medicine specialist, who advised plaintiff to have the surgery.  Plaintiff agreed to have Dr. McHugh perform the surgery, but was told Graterford's medical department needed to set the surgery date.

On January 9, 2009, plaintiff filed a grievance (no. 257190) with the Pennsylvania Department of Corrections, complaining of constant knee pain and asking for surgery to be performed.  On January 13, 2009, defendant Stanishefski denied the grievance, noting that Dr. Stefanic's treatment plan called for plaintiff to wear a knee brace, and stating that "surgery was not indicated at this time."  Plaintiff then filed an appeal to Graterford Superintendent David DiGuglielmo, who upheld Stanishefski's decision.  Plaintiff then wrote a letter to the Bureau of Health Care Services.  Director Ellers responded to plaintiff's letter on March 26, 2009, writing that the medical care being provided to plaintiff by Graterford staff had been reviewed and determined to be "medically appropriate."

On July 20, 2009, Dr. McHugh performed knee surgery on plaintiff.  Afterwards, Dr. McHugh told plaintiff that he would bring him back for a post-surgery check up.  On December 21, 2009, having not yet been taken out to see Dr. McHugh, plaintiff filed another grievance (No. 300891).  Stanishefski denied the grievance, writing that plaintiff

was scheduled for a follow-up visit with Dr. Stefanic in April 2010.  Plaintiff saw Dr. Stefanic in April 2010, and Dr. Stefanic suggested that plaintiff wait six months to review results from the knee surgery before considering other treatment.  According to plaintiff, Dr. Stefanic was not qualified to determine his post-surgery knee treatment because he did not perform the surgery and is not a licensed knee surgeon.  On October 15, 2010, plaintiff was sent to Dr. McHugh for a follow-up visit.  Dr. McHugh found that the knee was still "loose."

Plaintiff continues to experience pain with his knee.  He sues for damages, claiming that Dr. Stefanic was deliberately indifferent to his health in delaying both the knee surgery and post-surgery appointment with Dr. McHugh.  He also claims that Stanishefski and Ellers, as supervisors, knew of the inadequate medical care being provided and failed to take proper action.  Dr. Stefanic, Stanishefski , and Ellers have all filed motions to dismiss.

## II.  <u>Standard of Review</u>

As the Supreme Court has recently noted, to survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  While detailed

4

factual allegations are not required, more is demanded than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555). When reviewing a motion to dismiss brought under Rule 12(b)(6), a district court must accept all the factual allegations in a complaint as true. *See Revell v. Port Authority of N.Y., N.J.*, 598 F.3d 128, 134 (3d Cir. 2010). In addition, pro se complaints, like plaintiff's, "must be liberally construed." *Merritt v. Fogel*, 349 F. App'x 742, 745 (3d Cir. 2009) (citing *Erickson v. Pardus*, 551 U.S. 89, 93-96 (2007)).

III.    **Analysis**

Plaintiff's complaint alleges that the defendants were deliberately indifferent to his medical needs in violation of the Eighth Amendment. The defendants have made various attacks on plaintiff's complaint in their motions to dismiss, which the court will address in the following sections.

A.    Exhaustion of Administrative Remedies

Defendants argue that plaintiff's claim should be dismissed because his complaint fails to show that he properly exhausted his administrative remedies prior to bringing this suit. *See* Docket No. 34 at 11; Docket No. 35 at 17. The Prison Litigation Reform Act states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). A prisoner must comply with the procedural rules and

take all the required steps of the review process in order to be entitled to judicial relief.
*See Woodford v. Ngo*, 548 U.S. 81, 94 (2006).

Pennsylvania's inmate grievance system is governed by Administrative Directive 804 (DC-ADM 804), which provides three stages of administrative review.  *See Williamson v. Wexford Health Sources, Inc.*, 131 Fed. Appx. 888, 890 (3d Cir. 2005). Pursuant to DC-ADM 804, an initial grievance first must be submitted to a Grievance Coordinator.  If this initial grievance is denied, the inmate can appeal the adverse decision to the Facility Manager or Superintendent of the local prison.  The final step requires the inmate to file a final appeal with the Secretary's Office of Inmate Grievances and Appeals.  *See id.*

Plaintiff alleges that he filed two grievances.  He properly filed his first grievance (No. 257190) to a Grievance Coordinator on January 9, 2009.  He then appealed the initial denial of the grievance to Superintendent DiGuglielmo as required.  Plaintiff then claims he "took his issue to the third level" by writing a letter to the Bureau of Health Care Services.  Docket No. 21 at 4.  While this letter apparently was not sent to the Secretary's Office of Inmate Grievances and Appeals, as required by DC-ADM 804, plaintiff claims that the Department of Corrections allows correspondence sent to one department by a prisoner to be forwarded to the correct department in order to comply with procedural requirements.  Docket No. 39 at 7.  Plaintiff did receive a response to his letter from Director Ellers stating that his concerns were reviewed by staff at the Bureau

of Health Care Services.  Docket No. 38 at 19.  Plaintiff thus exhausted his administrative

remedies with respect to his first grievance claim, No. 257190.

However, plaintiff has failed to exhaust administrative remedies with respect to his

second grievance, No. 300891.  Plaintiff claims he filed this grievance on December 21,

2009.  Docket No. 21 at 5.  In it, he requested to see Dr. McHugh, the physician who

performed his knee surgery, in order to obtain post-surgery treatment.  *Id.*  Plaintiff claims

that he received an initial response to this grievance from Stanishefski, but has failed to

show that he appealed this decision.  Thus, plaintiff did not follow steps two and three of

the grievance system as required and therefore failed to exhaust his administrative

remedies.  Accordingly, plaintiff's claim relating to his second grievance will be

dismissed.

B.    Eleventh Amendment

Defendants Ellers and Stanishefski seek to dismiss plaintiff's § 1983 claim against

them on Eleventh Amendment immunity grounds.  Docket No. 34 at 7.  The Eleventh

Amendment bars suits in federal court by a private party against states or state agencies.

*See Kentucky v. Graham*, 473 U.S. 159, 167 n. 14.  It also bars suit against state officials

acting in their "official" capacities.  *Melo v. Hafer*, 912 F.2d 628, 635 (3d Cir. 1990).

However, the Eleventh Amendment does not bar suits against state officials in their

"personal" capacities.

To determine whether plaintiff sued Ellers and Stanishefski in their official

capacities, personal capacities, or both, the court looks to the plaintiff's complaint and the "course of proceedings." *Id.* (quoting *Graham*, 473 U.S. at 167 n. 14). Plaintiff's pro se complaint does not specify whether he is seeking damages from the defendants in their personal or official capacities. Because of the Eleventh Amendment principles outlined above, plaintiff's claims will be dismissed against defendants Ellers and Stanishefski insofar as plaintiff seeks relief against them in their official capacities.

C.    Deliberate Indifference

Defendants Ellers, Stanishefski, and Dr. Stefanic also argue that plaintiff's complaint should be dismissed because it fails to state a claim for the violation of the Eighth Amendment. Docket No. 34 at 9; Docket No. 35 at 10. The court agrees and will therefore dismiss plaintiff's complaint.

The Eighth Amendment's prohibition of cruel and unusual punishment requires prison officials to provide basic medical treatment to inmates. *See Estelle v. Gamble*, 429 U.S. 97 (1976). In order to state a cognizable claim, however, a prisoner must demonstrate that officials were "deliberately indifferent" to his or her serious medical needs. *Id.* at 106. Mere negligence or medical malpractice, without some higher culpable state of mind, does not constitute "deliberate indifference." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Rather, deliberate indifference is conduct that is reckless or shows a conscious disregard of an excessive risk to an inmate's health. *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 842); s*ee also Gravely v. Tretinik*, 414 F. App'x 391, 394 (3d

8

Cir. 2011).  The Third Circuit has "found 'deliberate indifference' in a variety of circumstances, including where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment."  *Rouse*, 182 F.3d at 197.  However, "no claim is stated when a doctor disagrees with the professional judgment of another doctor." *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990).  *See also Brito v. Dep't of Justice*, 392 Fed. Appx. 11, 14 (3d Cir. 2010) ("an inmate's disagreement with the course of treatment" does not constitute deliberate indifference).

Turning first to plaintiff's claims against Dr. Stefanic, and accepting the facts stated in plaintiff's complaint as true, the court finds that plaintiff has failed to state a claim against Dr. Stefanic that rises to the level of deliberate indifference.  In claims against prison physicians, the Third Circuit has specified that "as long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights."  *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990).  Similarly, "[a] medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment.  At most it is medical malpractice . . . ."  *Estelle*, 429 U.S. at 107.

In the present case, plaintiff's amended complaint states that he was referred to Dr. Stefanic shortly after injuring his knee in July 2007, and Dr. Stefanic provided him with

treatment, including a cortisone injection, knee brace, and a prescription of pain medication.  Docket No. 21 at 3.  Dr. Stefanic also consulted with plaintiff about having knee surgery in September 2008.  *Id*.  Dr. Stefanic then treated plaintiff after his surgery in April 2010, suggesting that he wait six months to see results before committing to a new course of treatment.  Read in the light most favorable to plaintiff, the complaint at most shows that Dr. Stefanic was negligent and provided inadequate medical care—not that Dr. Stefanic knew that plaintiff needed medical care and intentionally refused to provide it or delayed necessary medical care for non-medical reasons.  *See Rouse*, 182 F.3d at 197.  While plaintiff and Dr. McHugh might have preferred a more aggressive course of treatment, their disagreement with Dr. Stefanic's decisions is not sufficient to establish deliberate indifference.  *See White*, 897 F.2d at 110.  Accordingly, Dr. Stefanic's motion to dismiss plaintiff's claim is granted.

Plaintiff also has failed to state a claim for deliberate indifference against Ellers or Stanishefski.  The Third Circuit has held that prison officials cannot "be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor."  *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993).  "If a prisoner is under the care of medical experts . . ., a non-medical prison official will generally be justified in believing that the prisoner is in capable hands."  *Spruill v. Gillis*, 372 F.3d 218, 236 (3d. Cir. 2004).  Accordingly, "absent a reason to believe (or actual knowledge) that prison doctors or their

assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Id.*

Here, plaintiff's amended complaint offers the conclusory allegations that both Stanishefski and Ellers "learned of the violation of plaintiff's rights and failed to do anything to fix the situation" and were both "grossly negligent in managing the people [they] were supposed to supervise." Docket No. 21 at 6-7.  However, the factual allegations in the complaint do not state a plausible claim that either Stanishefski or Ellers was deliberately indifferent to plaintiff's health.  Plaintiff was provided treatment after his knee injury, both at Graterford and at outside medical facilities, including a surgery operation.  When plaintiff complained about his course of treatment, both Stanishefski and Ellers responded by deferring to the treatment plan set by Graterford medical staff.  As explained above, while plaintiff disagreed with Dr. Stefanic's decisions, plaintiff has failed to allege facts suggesting that Dr. Stefanic intentionally mistreated or failed to treat his knee problems.  Plaintiff has likewise failed to allege any facts plausibly suggesting that Ellers and Stanishefski had reason to believe that Dr. Stefanic was mistreating or failing to treat his knee problems.  *See Spruill*, 372 F.3d at 236.  Accordingly, Ellers' and Stanishefski's motion to dismiss plaintiff's claim will be granted.

IV.   **Conclusion**

For the foregoing reasons, plaintiff's claims against Dr. Stefanic, Ellers, and

Stanishefski will be dismissed.[3]  An appropriate order follows.

---

[3] Because all claims over which this court has original jurisdiction will be dismissed, the court declines to exercise supplemental jurisdiction over any state law claims that plaintiff may have against these defendants.  *See* 28 U.S.C. § 1367(c)(3); *Figueroa v. Buccaneer Hotel Inc.*, 188 F.3d 172, 181 (3d Cir. 1999).  Accordingly, plaintiff's motion to amend his complaint to add state law medical malpractice claims, *see* Docket No. 27, will be dismissed as moot.